LOWELL HOUSING AUTHORITY *vs.* SAVE-MOR FURNITURE
STORES, INC.

Middlesex.    October 9, 1963. — November 5, 1963.

Present: SPALDING, WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Landlord and Tenant,* Tenancy at sufferance. *Value.*

A valid taking by eminent domain by a housing authority of the whole of a parcel of real estate divested its owner of title thereto, automatically terminated a lease of a portion of the premises and the lessee's obligation to pay rent to the owner and lessor, and caused the lessee, holding over, to become a tenant at sufferance of the authority under G. L. (Ter. Ed.) c. 186, § 3. [429–430]

The fact that one person was the president, treasurer, manager and common owner of both a corporation which was the owner of a parcel of real estate and a corporation which was a lessee of a portion of the premises when the premises were taken by eminent domain by a housing authority and the lessee corporation, holding over, became a tenant at sufferance, warranted a conclusion that the tenant corporation knew of the change in ownership, and it was liable to the authority under G. L. (Ter. Ed.) c. 186, § 3, for use and occupation.   [430–431]

A tenant at sufferance of an area on the first floor of a building and in control of a ramp leading to and controlling the use of the second floor was liable to the owner of the building under G. L. (Ter. Ed.) c. 186, § 3, for use and occupation of not only the area on the first floor but also an area on the second floor in which the tenant permitted a third person to store goods.   [431]

Where a going concern which had paid a fixed rent under a lease of a portion of certain premises became a tenant at sufferance of a housing authority by reason of holding over after a taking of the premises by the authority by eminent domain, uncertainty of duration of occupation by the tenant was a factor in determining the fair rental value of its use and occupation for which it was liable to the authority under G. L. (Ter. Ed.) c. 186, § 3.   [431]

CONTRACT.   Writ in the District Court of Lowell dated May 8, 1959.

Upon removal to the Superior Court the action was heard by *Thompson, J.*

*Stanley M. Epstein* for the defendant.

*Robert P. Sullivan* for the plaintiff.

KIRK, J.   The plaintiff (the Authority) was awarded damages in this action of contract for the use and occupation by the defendant (Save-Mor) of part of the premises which were taken by eminent domain by the Authority from Subob Realty, Inc. (Subob), the lessor of Save-Mor.   The case was heard by a judge without jury upon the report of an auditor whose findings were not final.   A consolidated bill of exceptions wherein the Authority excepted to the denial of a request for a ruling as to damages, and Save-Mor to the denial of certain requests as to liability, brings this case to us.

We summarize the findings of the auditor.   One Glickman at all material times was the president, treasurer, manager and common owner of both Subob, the owner and lessor, and Save-Mor, the lessee.   Under its lease with

Subob, executed in January, 1956, Save-Mor occupied large areas of the first and second floors of a building at 338–340 Central Street, Lowell, at a rental of $675 a month, the fair value of the demised premises. Save-Mor used the premises for the retail sale and the storage of furniture. On June 6, 1958, the Authority took the land and building. In due course, Subob obtained a judgment for the taking which the Authority has satisfied. After the taking, and until November 25, 1958, Save-Mor continued to use and occupy the area on the first floor, but did not itself use and occupy the area on the second floor. Save-Mor did, however, permit one Smith, who was a tenant of other areas on the first and second floors, to use for storage purposes that part of the second floor which had been leased to Save-Mor. Access to the latter area was by a ramp which was part of the premises demised to Save-Mor, but which Smith had a right to use to reach his own partitioned area on the second floor. The nature of the building was such that whoever had the use and occupancy of the first floor had control over the use and occupancy of the second floor by way of the ramp leading to it. After the taking, there was discussion, but no agreement, between the Authority and Save-Mor as to the terms and conditions under which Save-Mor could continue to occupy the premises.

The auditor made alternate ultimate findings: A. Unless controlled by the subsidiary facts, Save-Mor was liable to the Authority as a tenant at sufferance of the first and second floors from June 6, 1958, to November 25, 1958, at the rate of $675 a month. B. If Save-Mor was liable for the use of the first floor only, the fair rental value was $450 a month. C. If the uncertainty of occupation resulting from the taking be a relevant factor in determining the fair rental value, (1) the charge for both floors should be at the rate of $450 a month, and (2) the charge for the first floor only should be at the rate of $300 a month.

Based upon the auditor's report, accompanied by certain exhibits, mainly photographic, which are also before us, the judge found for the Authority and assessed damages in the

sum of $2,534.66. The award and the disposition of the requests for rulings show, as the parties concede, that the judge found that Save-Mor was liable for the use and occupation of both floors but at the lower rental of $450 a month because of the uncertainty of occupancy due to the taking.

The exceptions of Save-Mor raise two questions for our determination. The first is whether Save-Mor, upon the taking, became a tenant at sufferance so as to be liable to the Authority for rent under G. L. (Ter. Ed.) c. 186, § 3, which reads: "Tenants at sufferance in possession of land or tenements shall be liable to pay rent therefor for such time as they may occupy or detain the same." It is clear that the valid[1] taking by the Authority of the whole of Subob's estate in fee divested Subob of its title and automatically terminated Save-Mor's lease. *Newman v. Commonwealth,* 336 Mass. 444, 446, and cases cited. Concurrently, Save-Mor's obligation to pay rent to Subob, under the lease or otherwise, came to an end. *O'Brien v. Ball,* 119 Mass. 28, 30. *Sparrow Chisholm Co. v. Boston,* 327 Mass. 64, 67. Further, we think that on well established principles, although we are not aware of any case precisely in point, Save-Mor, simultaneously with the taking became a tenant at sufferance of the Authority. This court in *Bunton v. Richardson,* 10 Allen, 260, held that a conveyance of the fee by the owner terminated a tenancy at will whereby the latter, upon the tenant's remaining in occupation, became a tenancy at sufferance in relation to the new owner. It was held further in the same case that the requisite privity of estate between the tenant and the new owner was created by the express terms of the statute (Gen. Sts. c. 90, § 25), which is the predecessor to G. L. (Ter. Ed.) c. 186, § 3. In *Merrill v. Bullock,* 105 Mass. 486, 491–492, and again in *Burke v. Willard,* 243 Mass. 547, 550, where the same statute was construed, it was recognized that a tenancy at sufferance could thus come into being whether the original tenancy was under a lease or at will. In both of

---

[1] We disregard as being without merit Save-Mor's bald unsupported allegations that the taking was invalid.

these cases it was stated: ". . . the intention of the Legislature was to . . . prevent any tenant from occupying premises without making compensation to his landlord; and to declare that an action of contract for use and occupation might be maintained wherever the relation of tenant and landlord, either by lease for years or at will, or permission and assent, express or implied, had existed between the defendant and the plaintiff, or between the defendant and any person with whom the plaintiff was in privity of estate, even if he might not, but for the statute, have been in sufficient privity with the defendant to maintain the action . . . ."

We accordingly rule that under this construction the transfer of title from Subob to the Authority, although not voluntary but rather in the valid exercise of the power of eminent domain, established the requisite privity of estate between Subob and the Authority and that Save-Mor became a tenant at sufferance of the Authority. We note in passing the dictum in *Emmes* v. *Feeley,* 132 Mass. 346, 348, where it was said, "If the conveyance [by the defendant's former landlord] to the city had been of the whole land [following an order of taking by the city of Boston of two thirds of the land], the defendant after the conveyance would be liable for rent to the city under the Gen. Sts. c. 90, § 25, as tenant at sufferance. *Bunton* v. *Richardson,* 10 Allen, 260."

It appears, however, that even though a tenancy at sufferance has come into existence, this court as a condition precedent to recovery under G. L. (Ter. Ed.) c. 186, § 3, or its antecedents, has consistently required that notice in some form be given to the tenant at sufferance that the interest of his landlord has been transferred. *Dixon* v. *Smith,* 181 Mass. 218, 220–221, and cases cited. *Swift* v. *Boyd,* 202 Mass. 26, 28. *Gavin* v. *Durden Coleman Lumber Co.* 229 Mass. 576, 578–579. See *Bunton* v. *Richardson,* 10 Allen, 260, and *Merrill* v. *Bullock,* 105 Mass. 486, 491–492. This requirement of notice to, or of awareness on the part of, the tenant of the change in ownership, is here met by the

finding of the identity of ownership and management of Subob and Save-Mor. We accordingly conclude that Save-Mor became a tenant at sufferance of the Authority and was liable for the fair rental value of the premises occupied or detained by it.

The second question raised by Save-Mor's exceptions is whether it is liable for the fair rental value of the area on the second floor as well as of the area on the first floor. The basis of liability for use and occupation consists in the control over the premises which effectively deprives the new owner of the use of the property. *Horton* v. *Cooley,* 135 Mass. 589, 590. It was here found that Save-Mor by its control of the ramp in fact controlled the use of the second floor. In our opinion the judge warrantably concluded from the auditor's report that Save-Mor's permission to Smith to use the area of the second floor which had been demised to it, and which Smith had no right to use, was an exercise of dominion over its use and constituted a detaining of the area by Save-Mor within the meaning of the statute.

We consider finally the question raised by the Authority's exception to the denial of its request for a ruling that uncertainty of occupation is not a legitimate factor in determining fair rental value. There was no error. The liability of a tenant at sufferance is not to be determined arbitrarily by the rent fixed in a lease with the former owner, but rather is the sum which the trier of fact finds the use and occupation were reasonably worth. See *Emmes* v. *Feeley,* 132 Mass. 346, 349. The prospect of a going concern being required to vacate on short notice is one of several factors which properly could be considered by the judge as tending to diminish the rental provided in the lease to the value found in the alternative by the auditor. See *Kittredge* v. *Peaslee,* 3 Allen, 235, 236.

*Exceptions overruled.*