STAHL, Circuit Judge.
 

 On September 21, 1990, the Montague Economic Development Industrial Corporation (“MEDIC”), after reaching impasse in negotiations to purchase from Cumberland Farms, Inc. (“Cumberland”) a convenience store in Turner’s Falls, Massachusetts, took the property by eminent domain. That same day, pursuant to Mass.Gen.L. ch. 79, § 1, the order of taking was recorded, and as a result, Cumberland’s ownership rights in the property were extinguished. Mass.Gen.L. ch. 79, § 3.
 

 Cumberland, the owner of hundreds of convenience stores in various states, objected to MEDIC’s taking decision. Cumberland’s legal maneuvering, and its bankruptcy, converted what began as a simple eminent domain case into a six-year litigious war.
 

 We summarize briefly. Initially, Cumberland demanded pro tanto compensation for the property, but when MEDIC obliged, Cumberland rejected its offer and chose instead to contest the taking. Cumberland initiated various state and federal court actions, all designed to frustrate the taking and to deny MEDIC possession. Eventually, in May of 1992, while still in possession of the contested property, the Cumberland chain filed for protection and reorganization under Chapter 11 of the Bankruptcy Code, which further delayed MEDIC’s gaining possession. Suffice it to say that none of Cumberland’s delaying actions had merit, and finally on September 3, 1993, nearly three years after acquiring legal title, MEDIC obtained physical possession of the premises.
 

 Previously, Cumberland had commenced a state court action objecting to the amount of MEDIC’s original pro tanto offer and claiming reimbursement for relocation expenses and damages. MEDIC removed the action to the United States Bankruptcy Court for the District of Massachusetts, where Cumberland’s bankruptcy case was pending.
 

 The bankruptcy court found that Cumberland was entitled to recover from MEDIC $380,000 as compensation for the value of the property and $36,850 for relocation costs, reduced by $137,250 for the rental value of its use and occupancy during Cumberland’s holdover on the premises, therefore judgment was issued for the net amount of $279,-600. The court allowed MEDIC’s rent claim, even though the eminent domain statute did not speak to a taking entity’s right to charge reasonable rent during a wrongful holdover beyond the date when the taken premises
 
 *12
 
 must be vacated. The court disallowed Cumberland’s claim for interest on the compensation payment, because Cumberland could have accepted the pro tanto payment and obtained use of the funds at that time. The decision of the bankruptcy court was subsequently affirmed by the United States District Court for the District of Massachusetts, and from that affirmance this appeal followed.
 

 On this appeal, Cumberland argues that the bankruptcy court erred in awarding MEDIC fair market rent during the holdover period during which Cumberland was challenging the eminent domain proceeding, erred in the amount of relocation damages awarded to it, and erred by not awarding damages for the authority’s alleged failure to provide timely and adequate relocation assistance. We find that none of Cumberland’s arguments on appeal merit extensive consideration.
 
 [1]
 
 We review the bankruptcy court’s findings of fact for clear error and subject its rulings of law to de novo review.
 
 T I Fed. Credit Union v. Delbonis,
 
 72 F.3d 921, 928 (1st Cir.1995).
 

 Discussion
 

 We begin with Cumberland’s claim that it is not hable for the use and occupancy charges that the bankruptcy court awarded to MEDIC, an issue that we review de novo. The applicable Massachusetts eminent domain statute allowed Cumberland to remain on the premises for a period of four months after it received the notice of taking. Mass. Gen.L. ch. 79, § 8B. Before exercising its possessory rights, MEDIC was required to give Cumberland a thirty-day notice to vacate, sent by registered mail or posted on the property. Mass.Gen.L. ch. 79, § 3.
 

 The bankruptcy court found that MEDIC provided notice of the taking to Cumberland on October 9, 1990, and provided thirty-day notice of eviction on January 8, 1991. Thus, MEDIC was within its rights in requiring Cumberland to vacate the property by February 13, 1991. MEDIC’s counterclaim to Cumberland’s petition for damages sought rent for the period from February 14, 1991, to August 30, 1993, when MEDIC finally obtained possession.
 

 Although the taking statute does not address a holdover occupant’s liability for the fair rental value of its use and occupancy, the Massachusetts regulation on relocation assistance appears to contemplate charges for use and occupancy rent following a taking, because it directs a taking authority to inform a property owner of the rent to be paid during any holdover period. 760 C.M.R. § 27.03(13). MEDIC, in its January 8, 1991, notice to vacate, informed Cumberland that it would seek fair market rent if Cumberland remained in possession.
 

 The bankruptcy court ruled that Cumberland, following its failure to vacate as directed, became a tenant at sufferance, and as a result MEDIC was entitled to rent pursuant to Mass.Gen.L. ch. 186, § 3, which provides that tenants at sufferance are hable for rent during the period of continued occupancy after a demand for the premises has been made. It also found that MEDIC’s claim was fully justified under a theory of unjust enrichment, because Cumberland’s continued use of the premises was profitable. Although we find no decision exactly on point, the Supreme Judicial Court in
 
 Lowell Housing Authority v. Save-Mor Furniture Stores, Inc.,
 
 346 Mass. 426, 193 N.E.2d 585, 587 (1963), approved a taking authority’s claim for use and occupancy charges from a tenant who remained in possession after a public housing authority took the property from the landlord-owner by eminent domain. Cumberland argues that as an
 
 owner
 
 its position is different from that of a
 
 tenant.
 
 We find Cumberland’s argument unconvincing, and that Cumberland’s wrongful holdover does not differ in any relevant regard from that of the tenant in
 
 Lowell Housing. See
 
 193 N.E.2d at 587. Because we find that
 
 Lowell Housing
 
 is apposite, we conclude that the bankruptcy court did not err in awarding MEDIC the fair rental value of Cumber
 
 *13
 
 land’s continued use and occupancy of the premises. Accordingly, we need not consider unjust enrichment, the second basis for the court’s finding.
 

 Cumberland next argues that the bankruptcy court erred in failing to grant all of its claimed relocation expenses, and again our review is de novo. Specifically, Cumberland claims that the court erred in not finding that it was entitled to reimbursement for the cost of new gasoline pumping equipment for its new location, for license and inspection fees, and for the cost of certain physical changes to its new location.
 

 We find no error in the bankruptcy court’s award of relocation costs under Mass. Gen.L. ch. 79A, § 7, which provides that a taking authority must reimburse a property owner for:
 

 1. actual documented reasonable expenses in moving himself, his family, his business, farm operation, or other personal property;
 

 2. actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the relocation agency; and
 

 3. actual reasonable expenses in searching for a replacement business or farm.
 

 Although the bankruptcy court awarded payment for certain of Cumberland’s claimed relocation expenses as required by Mass. Gen.L. ch. 79A, § 7, it denied Cumberland’s request for the costs of obtaining new gasoline pumps, for license and inspection fees, and for certain physical changes to its new facility. Cumberland urges that the court erred in ruling these expenses were not recoverable under Mass.Gen.L. ch. 79A, § 7 and, in particular, the implementing regulations, 760 C.M.R. 27.09(8), 27.09(13), and 27.09(14). MEDIC’s short answer is that MEDIC is a taking authority governed by Mass.Gen.L. ch. 121C, and that the relocation payment regulations that Cumberland relies upon apply to authorities governed by Mass. Gen.L. ch. 121A and 121B, but not to 121C agencies.
 
 [2]
 

 See
 
 760 C.M.R. 27.01(4) (listing activities and entities to which the relocation payment regulations apply). We agree with MEDIC, as did the district court, and conclude that Cumberland is entitled to reimbursement only as provided in Mass.Gen.L. ch. 79A, § 7, and not under the more expansive provisions of 760 C.M.R. 27.09.
 
 [3]
 

 Finally, Cumberland claims that the bankruptcy court erred in ruling that MEDIC had fulfilled its relocation assistance obligations to Cumberland. We review this factual finding
 
 [4]
 
 for clear error, and we find no error, let alone clear error, in the bankruptcy court’s denial of Cumberland’s claims for damages due to MEDIC’s failure to provide relocation assistance.
 

 Affirmed.
 
 Costs to appellee.
 

 [1]
 

 . Cumberland’s notice of appeal included a complaint about the court's failure to grant interest to it on the compensation awarded for the taking. We deem this issue waived, as Cumberland has not referred to it in its brief.
 
 See, e.g., Willhauck v. Halpin,
 
 953 F.2d 689, 700 (1st Cir.1991) (issues not fully presented in appellate brief are deemed waived).
 

 [2]
 

 . The relocation
 
 assistance
 
 regulations, in contrast to the relocation
 
 payment
 
 regulations, appear to apply broadly to all entities authorized to take by eminent domain.
 
 See
 
 760 C.M.R. 27.01(4). .
 

 [3]
 

 . We note that the record contains documents provided by MEDIC to Cumberland that seem to promise reimbursement of the types of expenses that the bankruptcy court denied. Cumberland's brief, however, does not contain any arguments based on estoppel or similar theories. Therefore such arguments, whatever their merit, are waived.
 
 See, e.g., Willhauck,
 
 953 F.2d at 700.
 

 We have not considered any of the arguments raised by Cumberland in its Motion for Leave to Present Rebuttal Argument Pursuant to Local Rule 34.1(b). Cumberland had an opportunity to raise rebuttal arguments in a reply brief, but chose not to submit one. Moreover, Local Rule 34.1(b) pertains to oral rebuttal during the scheduled argument, and does not provide an opportunity for further briefing of issues after oral argument.
 

 [4]
 

 .Cumberland's brief could be read to suggest that the bankruptcy court’s ruling in this regard was a legal conclusion concerning an earlier order of the Massachusetts Superior Court. Even though Cumberland has not clearly presented that argument, a de novo review of the bankruptcy court’s ruling would yield the same result: no error.